# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY BEARD, et al.,<br><br>　　　　Defendants. | Case No.  1:14-cv-00625-LJO-SAB-PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS<br><br>THIRTY-DAY DEADLINE |

　　　　Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.  Currently before the Court is Plaintiff's complaint, filed March 23, 2015.

**I.**

**SCREENING REQUIREMENT**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a

1

governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)(citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Corcoran, brings this civil rights action against Defendant correctional officials employed by the CDCR at CCI Tehachapi. Plaintiff names as defendants the following individuals: CCI Warden K. Holland; Correctional Officer (C/O) J. Hobmeier; C/O Emerson; C/O G. Wildey; C/O Ganoa; C/O Rodriguez; CDCR Director Beard, Governor Brown.

Plaintiff alleges that the CDCR in general has engaged in discriminatory hiring practices. Plaintiff appears to allege that because the prisons are located primarily in rural areas of California, the employees hired by the CDCR to operate the prisons are from rural areas of California.  Plaintiff appears to allege that CDCR employees are somehow ethnically distinct from the inmate population, which comes largely from the urban areas of the state.   Plaintiff also sets forth a claim of excessive force.

As to the specific incident of excessive force, Plaintiff alleges that on March 11, 2013, at 7:00 a.m., while incarcerated at CCI Tehachapi 4B Security Housing Unit (SHU), he was directed by Defendants Hobmeier and Emerson to get ready to be transported to court.  Plaintiff told Emerson that "due to an institutional issue," he had not shaved for a week and would like to shave.  Emerson told Plaintiff that it was "not my problem."  Plaintiff told Emerson that "I'm not going out without shaving." (Comp. ¶ 17.)   Emerson left, then returned with Defendants Hobmeier, Wildey and Ganoa.

At that point, Plaintiff placed his hands behind his back and placed them through the food port in order to be handcuffed.  Plaintiff was removed from the cell and escorted by Defendant Emerson to the strip cage.  Plaintiff's hands were cuffed behind his back, and he was holding his manila envelopes. Plaintiff alleges that he was not resisting, and that upon stepping into the strip cage, Defendant Emerson "grabbed Plaintiff by the back of the head and slammed him against right side back of cage, and held his head against the metal cage; placed his leg between Plaintiff's legs and proceeded to uncuff petitioner . . . before removing handcuffs through open door slot. Petitioner hit face first scraping front and right side of face and scratching right arm of prescription glasses."  (Compl. ¶ 20.)  Plaintiff specifically alleges that he was not physically resisting.

Defendant Wildey then closed the door to the strip cage and conducted a strip search. While placing handcuffs on Plaintiff after the strip search, Wildey stated in a loud voice, "'that's what happens when you play with lil'boys.' (Insinuating that I was convicted of a sex crime – a blatant lie)."   Plaintiff alleges that the search was conducted in C pod, "which houses the most violent prisoners and it is common knowledge that those convicted of sex crimes, informants,

3

rapists are subject to physical harm." (Compl. ¶ 21.)

Defendants Emerson and Wildey escorted Plaintiff to Receiving and Release. Plaintiff was transported to Kern County Superior Court and returned to the prison. Upon his return, Emerson and Wildey escorted Plaintiff back to his housing unit. Instead of returning Plaintiff to his regular cell, Defendants placed Plaintiff in a management cell. The management cell did not have a locker, table or bunk. Plaintiff requested a grievance form, which was denied by Defendant Emerson. Emerson specifically told Plaintiff "don't waste your time. 602s here make it to the trash can." Plaintiff alleges that after walking away from Plaintiff's cell, Emerson stopped in the vicinity of cells 109 and 110, "and commented . . .we have us a weirdo in cell 106 . . (which in prison jargon translates to crazy, sex offender, snitch, P.C.) . . this comment was made to active prison gang members for the sole purpose to instigate." (Compl. ¶ 24.)

Plaintiff filed a written grievance on a sheet of paper due to the refusal of officers to provide a form. Plaintiff did not receive a response. On April 5, 2013, Plaintiff was moved out of the management cell. Plaintiff contends that he was held in a management cell for 26 days, despite the fact that he had not received a disciplinary charge or any kind of hearing. Plaintiff contends that Emerson put Plaintiff in a management cell in contravention of CDCR policy, which requires a sergeant to approve such a placement.

During the 26 days that Plaintiff was in the management cell, he was subjected to "threats and comments from prisoners about his charges." (Compl. ¶ 28.) Plaintiff alleges Defendant Rodriguez conducted a "harassment campaign" with active prison gang members. Plaintiff also alleges that while he was in the management cell, "no medical attention was given for laceration and bruise on petitioners face and severe headaches due to blow to side of petitioners head and was refused medical forms." (Id.)

On February 18, 2014, Plaintiff filed a CDC Form 602, regarding the use of excessive for and "identical claims." Plaintiff was interviewed regarding his appeal by Lt. Knowles. Plaintiff explained that the formal appeal was not timely because his original appeal (written on a piece of paper) was thrown in the trash. Plaintiff alleges that since the interview, Defendants Ganoa, Rodriguez and Wildey "escalated their comments and accusations, labeling Plaintiff as a snitch

because I filed the suit." (Compl. ¶ 32.)

On April 1, 2014, Plaintiff was informed that he would be moved to a different cell. That morning, Defendants Wildey and Rodriguez arrived to escort Plaintiff. While escorting Plaintiff out of the housing unit, Wildey, within hearing distance of all 20 cells, stated "that's what happens . . .when you file grievances . . . why don't you stop filing complaints against us . . . Defendant Rodriguez loudly commented, 'yeah dude . . . stop snitching on us.'" (Compl. p. 33.)

Plaintiff also alleges generally that "there is a pattern and practice of retaliation, campaign harassment against jail house lawyers and those whom file grievances . . , use of excessive force, theft/loss of property; mail at CCI Tehachapi State Prison resulting in harmful injuries." (Compl. ¶ 34.) Plaintiff alleges that Defendant Warden Holland is aware of this pattern and practice because of the many grievances and lawsuits filed by inmates.

### III.

### DISCUSSION

#### A. Eighth Amendment Excessive Force

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)(per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37(quoting Hudson, 503 U.S. at 7)(quotation marks omitted).

Here, the Court finds that, liberally construed, Plaintiff has stated an excessive force claim against Defendant Emerson. The allegations of the complaint indicated that Plaintiff was in the strip cage and was not offering resistance when Defendant Emerson grabbed Plaintiff by the back of the head and slammed him into the back of the cage.

///

### B. Verbal Threats

Plaintiff alleges that Defendant Wildey insinuated Plaintiff was convicted of a sex crime by stating "that's what happens when you play with lil' boys." Plaintiff also alleges that Defendant Emerson called Plaintiff a weirdo, "which in prison jargon translates to crazy, sex offender, snitch, P.C." (Compl. ¶¶ 21, 24.) Plaintiff has not alleged any facts indicating that he was in any way injured by the conduct of Defendants Wildey and Emerson.

The Ninth Circuit has dismissed claims alleging prison guards were deliberately indifferent to a prisoner's safety in violation of the Eighth Amendment because the prisoner "did not allege that he had been assaulted or threatened by assault by other prisoners." Williams v. Wood, 223 Fed.Appx. 670, 671, 2007 WL 654223, *1 (9th Cir. 2007). The Ninth Circuit has also rejected an Eighth Amendment claim where guards labeled an inmate a "snitch" but the inmate had not been retaliated against. Morgan v. McDonald, 41 F.3d 1291, 1294 (9th Cir. 1994). In these cases the Ninth Circuit reasoned that "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm." Williams, 223 Fed.Appx. at 671. These cases do not stand for the proposition that injury is a necessary element of a failure to protect claim. Rather, in these cases, the plaintiffs failed to allege how a certain label resulted in a serious risk of harm and how that harm was known to the prison guard. Here, Plaintiff is relying on speculative and generalized fears of harm. Although Defendants reference "lil' boys,' and "weirdo," There are no specific allegations that specific information was given to a particular inmate that posed a specific threat to Plaintiff.

In some circumstances, a prison official may create a serious risk of irreparable harm, and thus violate the Eighth Amendment, by giving other inmates reason to believe that a particular inmate is a homosexual. Radillo v. Lunes, 2008 WL 4209824, *2 (E. D. Cal. Sep. 8, 2008); see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)(deliberately spreading rumor that prisoner is snitch may state a claim for violation of right to be protected from violence while in state custody). The Court finds Radillo to be instructive. In that case, the defendant identified the plaintiff as a member of a prison gang that was engaging in homosexual activity,

and asked a known gang member if harm would come to a member of the gang that engaged in such activity. The defendant then informed the gang affiliate of the plaintiff's homosexual activity. Here, Defendants, at most, made comments that referred in general to "lil boys" and being a "weirdo," but did not specifically identify Plaintiff as someone who was particularly vulnerable and communicate that information to an inmate that would pose a specific harm to Plaintiff. The Court finds these allegations to be insufficiently specific to state a claim for relief.

### C. Management Cell

Plaintiff alleges that he was improperly placed in a management cell for 26 days. The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The Constitution itself does not confer on a prisoner a liberty interest in avoiding "more adverse conditions of confinement." See Id., Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986), abrogated in party by Sandin v. Conner, 515 U.S. 472 (1995); see also Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003). However, state law has created a constitutionally protected liberty interest in a prisoner remaining free from arbitrary administrative segregation. Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010)(as amended); Toussaint, 801 F.3d at 1097-98. When an inmate is placed in administrative segregation, due process requires notice of the charges or reason for segregation, an opportunity for the prisoner to present his views, and a non-adversary hearing of the information supporting placement within a reasonable time. Toussaint, 801 F.2d at 1100. Further, the disciplinary decision must be supported by "some evidence." See Id. at 1104-05.

"These healthy procedural protections, however, adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected manner' or imposes an 'atypical and significant hardship' on the inmate in relation to the ordinary incidents of prison life." Serrano, 345 F.3d at 1078 (quoting Sandin, 515 U.S. at 484). Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) amended on denial of rehearing by 135 F.3d 1318 (9th Cir. 1998). The Court considers three factors in framing the inquiry: (1) "whether the challenged condition mirrored those imposed upon inmates in administrative segregation and protective

7

1 custody, and thus comported with the prison's discretionary authority"; (2) "the duration of the condition, and the degree of restraint imposed";  and (3) whether the state's actions will invariably affect the duration of the prisoner's sentence." Serrano, 345 F.3d at 1078 (9th Cir. 2003)(internal quotation marks omitted).

Here, Plaintiff alleges that he was placed on management cell status for 26 days.  Courts have previously held that placement in segregation for period of time longer than 10 days did not constitute "atypical and significant hardship" in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 486 (30 days of administrative segregation was permissible); Richardson, 594 F.3d at 672 (concluding that administrative segregation for 16 days did not constitute atypical and significant hardship).  Plaintiff has not alleged that his placement on management cell status had any impact on the duration of his sentence. See Serrano, 345 F.3d at 1078.  As such, considering the Serrano factors, Plaintiff's allegations are insufficient to demonstrate that his placement on management cell status alone constituted "atypical and significant hardship" in relation to the ordinary incidents of prison life.  There are no allegations in the complaint that Plaintiff was deprived of the "'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)(quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)(citation omitted)).  Plaintiff's management cell claim should therefore be dismissed.

### D. Medical Care

Regarding Plaintiff's allegations that he was denied medical care while he is in the management cell, The Court finds Plaintiff's allegations to be vague.  A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and

(2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 10986.

Here, Plaintiff alleges generally that staff failed to treat his medical condition while he was in the management cell. Although such an allegation indicates that he suffered from an objectively serious medical condition, he fails to allege any facts indicating how any of the named individual defendants knew of and disregarded his condition, resulting in injury to Plaintiff. In order to hold an individual defendant liable, Plaintiff must name the individual defendant, describe where that defendant is employed and in what capacity, and explain how that defendant acted under color of state law. Plaintiff should state clearly, in his own words, what happened. Plaintiff must describe what each defendant, *by name*, did to violate the particular right described by Plaintiff. Plaintiff has not done so here.

### E.     Retaliation

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements:" "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Cartier, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 169 (9th Cir. 2009).

Here, Plaintiff alleges that in retaliation for filing an inmate grievance, he was subjected to verbal threats. As noted above, the comments made by Defendants are not specific enough to state an Eighth Amendment claim. Further, allegations of threats and harassment do not state a

cognizable claim under 42 U.S.C. § 1983. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(assaultive comments by prison guard not enough to implicate Eighth Amendment); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987)(mere threat does not constitute constitutional wrong). Finally, Plaintiff has not alleged any facts suggesting that any First Amendment activity was chilled as a result of the filing of his inmate grievance. This claim should therefore be dismissed.

### F. CDCR Policy

Plaintiff alleges generally that "there is a pattern and practice of retaliation, campaign harassment against jail house lawyers and those whom file grievances . . , use of excessive force, theft/loss of property; mail at CCI Tehachapi State Prison resulting in harmful injuries." (Compl. ¶ 34.) Plaintiff alleges that Defendant Warden Holland is aware of this pattern and practice because of the many grievances and lawsuits filed by inmates.

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 673. In other words, to state claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff must allege facts indicating that Warden Holland was personally involved in the deprivation at issue. He has not done so here.

Regarding Defendants Governor Brown and Secretary Beard, Plaintiff has similarly failed to plead any facts indicating that these individuals violated Plaintiff's constitutional rights through their own individual actions. In order to hold these Defendants liable, Plaintiff must allege facts indicating that they were personally involved in the deprivation of Plaintiff's right. Plaintiff has failed to do so.

### IV.

### CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim against Defendant Emerson for excessive force. Plaintiff's remaining claims, however, fail. The Court will provide Plaintiff with the

opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendant Emerson on Plaintiff's excessive force claim, Plaintiff may so notify the Court in writing. The Court will recommend that the other defendants and claims then be dismissed for failure to state a claim. Plaintiff will then be provided one summons and one USM-285 form for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendant Emerson.

If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678-679; Jones, 297 F.3d at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . Twombly, 550 U.S. at 555 (citations omitted). The mere possibility of misconduct is insufficient to state a claim. Iqbal, 556 U.S. at 678. Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 1467, 1474 (7th Cir. 2007)(no "buckshot" complaints).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana,Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v.Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendant Emerson on his claim of

excessive force; and

3. If Plaintiff fails to comply with this order, the Court will recommend that this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **December 1, 2015**

UNITED STATES MAGISTRATE JUDGE