# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GARCIA, | Case No.  1:14-cv-00625-LJO-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| v. | |
| J. HOBMEIER, et al., | |
| Defendants. | (ECF Nos. 44, 47, 50) |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Felipe Garcia is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff declined United States Magistrate Judge jurisdiction; therefore, this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.[1]

Currently before the Court is Defendants J. Emerson, E. Gaona, J. Hobmeier, and G. Wildey's (collectively "Defendants") motion for summary judgment for failure to exhaust the administrative remedies, filed on October 19, 2016.

/ / /

/ / /

---

[1] Plaintiff declined United States Magistrate Judge jurisdiction on May 27, 2014.  (ECF No. 7.)

1

# I.

## RELEVANT HISTORY

This action is proceeding on the first amended complaint, filed December 23, 2015, against Defendant Emerson for excessive force, and against Defendants Gaona, Hobmeier, and Wildey for failure to protect.  (ECF Nos. 28, 33.)

On August 16, 2016, Defendants filed an ex parte request to file a pre-answer motion for summary judgment.  (ECF No. 38.)  On August 23, 2016, the Court granted Defendants' ex parte request to file a pre-answer motion for summary judgment.  (ECF No. 39.)

As previously stated, on October 19, 2016, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust the administrative remedies as to his claims against them.

On November 7, 2016, Plaintiff filed an opposition to Defendants' motion for summary judgment.  (ECF No. 47.)

On November 10, 2016, Defendants were granted an extension of time to reply to Plaintiff's opposition.  (ECF No. 49.)

On November 30, 2016, Defendants filed a reply to Plaintiff's opposition to the motion for summary judgment.  (ECF No. 50.)

# II.

## LEGAL STANDARD

### A.      Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."  42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __, 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.' ").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739

1  (2001)).

2       This statutory exhaustion requirement applies to all inmate suits about prison life, <u>Porter</u>

3  <u>v. Nussle</u>, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

4  the prisoner or the relief offered by the process, <u>Booth</u>, 532 U.S. at 741, and unexhausted claims

5  may not be brought to court, <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (citing <u>Porter</u>, 534 U.S. at

6  524).

7       The failure to exhaust is an affirmative defense, and the defendants bear the burden of

8  raising and proving the absence of exhaustion.  <u>Jones</u>, 549 U.S. at 216; <u>Albino v. Baca</u>, 747 F.3d

9  1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of

10  the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  <u>Albino</u>, 747 F.3d at

11  1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

12  are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

13  light most favorable to the plaintiff, shows he failed to exhaust.  <u>Id.</u>

14       **B.    Summary Judgment Standard**

15       Any party may move for summary judgment, and the Court shall grant summary

16  judgment if the movant shows that there is no genuine dispute as to any material fact and the

17  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

18  omitted); <u>Albino</u>, 747 F.3d at 1166; <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir.

19  2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be

20  supported by (1) citing to particular parts of materials in the record, including but not limited to

21  depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not

22  establish the presence or absence of a genuine dispute or that the opposing party cannot produce

23  admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The

24  Court may consider other materials in the record not cited to by the parties, although it is not

25  required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237

26  F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017

27  (9th Cir. 2010).

28       The defendants bear the burden of proof in moving for summary judgment for failure to

3

1    exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

2    administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

3    If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

4    forward with evidence showing that there is something in his particular case that made the

5    existing and generally available administrative remedies effectively unavailable to him." Id. "If

6    the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

7    exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166.  However,

8    "[i]f material facts are disputed, summary judgment should be denied, and the district judge

9    rather than a jury should determine the facts." Id.

10                                                    **III.**

11                                              **DISCUSSION**

12        **A.    Description of CDCR's Administrative Remedy Process**

13           Plaintiff is a state prisoner in the custody of the California Department of Corrections and

14   Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate

15   grievances.  Cal. Code Regs. tit. 15, § 3084.1 (2014).  Compliance with section 1997e(a) is

16   mandatory and state prisoners are required to exhaust CDCR's administrative remedy process

17   prior to filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v.

18   Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010).  CDCR's administrative grievance process for non-

19   medical appeals consists of three levels of review: (1) first level formal written appeals; (2)

20   second level appeal to the Warden or designees; and (3) third level appeal to the Office of

21   Appeals (OOA).  Inmates are required to submit appeals on a standardized form (CDCR Form

22   602), attach necessary supporting documentation, and submit the appeal within thirty days of the

23   disputed event.  Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

24        **B.    Summary of Allegations Underlying Plaintiff's Constitutional Claims**

25           On March 11, 2013, at 7:00 a.m., while incarcerated at California Correctional Institution

26   ("CCI") in Tehachapi in 4B Security Housing Unit (SHU), Defendants Hobmeier and Emerson

27   directed Plaintiff to get ready to be transported to court.  Plaintiff told Defendant Emerson that

28   "due to an institutional issue" he had not shaved for a week and would like to shave.  Defendant

1  Emerson told Plaintiff that it was "not my problem."  Plaintiff told Defendant Emerson that "I'm
2  not going out without shaving."   Defendant Emerson and then returned with Defendants
3  Hobmeier, Wildey, and Ganoa.

4       At that point, Plaintiff placed his hands behind his back and placed them through the food
5  port in order to be handcuffed.  Plaintiff was removed from the cell and escorted by Defendant
6  Emerson to the strip cage.  Plaintiff's hands were cuffed behind his back and he was holding his
7  manila envelopes.  Plaintiff alleges that he was not resisting, and that upon stepping into the strip
8  cage, Defendant Emerson "grabbed Plaintiff by the back of the head and slammed him straight
9  into the side of cage, while holding head/face against cage; he placed his leg between plaintiff's
10 upper legs and proceeded to remove handcuffs."  Plaintiff alleges that Defendant Emerson, in
11 violation of policy, removed Plaintiff's handcuffs while the cell door was open, and not through
12 the tray slot after the door had been closed.  When Defendant Emerson removed the handcuffs,
13 Plaintiff "hit face first, scraping top & side of face."  Plaintiff alleges that he was not resisting
14 and had not spoken.

15      Plaintiff alleges that Defendants Wildey, Gaona, and Hobmeier failed to intervene to stop
16 the attack on Plaintiff, or to ensure that Defendant Emerson followed procedure in closing the
17 cell door before removing Plaintiff's handcuffs.

18      **C.**   **Undisputed Facts**

19      1.   At all times relevant to the allegations in the first amended complaint, and during
20 the filing of the original complaint and the first amended complaint, Plaintiff was an inmate in
21 the custody of the California Department of Corrections and Rehabilitation ("CDCR").  (ECF
22 Nos. 1, 28.)

23      2.   Plaintiff initiated this action on April 28, 2014, when he filed the complaint.
24 (ECF No. 1.)

25      3.   On December 23, 2015, Plaintiff filed the operative first amended complaint, in
26 which he alleged that in March of 2013 Defendant Emerson used excessive force on him and that
27 Defendants Wildey, Gaona, and Hobmeier failed to protect him from that excessive force.  (ECF
28 No. 28.)

1    4.    The incidents described in the first amended complaint allegedly took place while

2    Plaintiff was an inmate at CCI.  (ECF No. 28.)

3    5.    On or around January 31, 2014, the office of the appeals coordinator at California

4    Correctional Institution ("CCI") received Plaintiff's CDCR Form 602 appeal log no. CCI-0-14-

5    00412 ("appeal log no. 412"). (Decl. of J. Wood ¶ 11, ECF No. 44-3.)  On February 24, 2014,

6    that appeal was cancelled at the first level of administrative review for failure to meet the thirty-

7    day time constraint for inmates to file appeals.  (Id.) After that appeal was resubmitted by

8    Plaintiff, it was again screened-out in a letter dated April 25, 2014, in which Plaintiff was

9    informed that he had been attempting to resubmit the same, already-cancelled appeal. (Id.) The

10   letter provided Plaintiff with instructions for appealing a cancellation decision.  (Id. Ex. B.)

11   6.    The CCI appeals coordinator's office received Plaintiff's appeal Log No. CCI-

12   014-00564 ("appeal log no. 564"), which was dated March 4, 2014.  (Decl. J. Wood ¶ 12.)  After

13   the first level of review was bypassed, the appeal was cancelled in a letter dated March 13, 2014,

14   at the second level of review because it was a duplicate of the prior, cancelled appeal, appeal log

15   no. 412.  (Id.)  The letter provided Plaintiff with instructions for appealing a cancellation

16   decision. (Id. Ex. C.)

17   7.    The Office of Appeals received appeal log no. 564 on April 11, 2014.[2]  (Decl. M.

18   Voong ¶ 10, ECF No. 44-4.)  That appeal was screened out on May 9, 2014, because it was a

19   repeated filing of a cancelled appeal.  (Id.)

20   **D.    Findings on Defendants' Motion**

21   Defendants move for summary judgment on the ground that the undisputed evidence

22   demonstrates that Plaintiff failed to adhere to the prison's administrative grievance process, and

23   in doing so, failed to exhaust his administrative remedies.  Specifically, Defendants argue that

24   Plaintiff delayed over nine months before attempting to initiate the administrative grievance

25   process.  Defendants assert that prison officials properly cancelled Plaintiff's untimely inmate

26   grievance, and thus, the issues are not exhausted.

27   

28   [2] The Office of Appeals references the appeal as log no. CCI-14-00564, whereas at the institutional level it is log no. CCI-0-014-00564.

6

1    Every CDCR institution has a designated Appeals Coordinator responsible for screening

2   and categorizing all inmate appeals.  Cal. Code Regs. tit. 15, § 3084.5(a).  The Appeals

3   Coordinator may cancel appeals pursuant to screening criteria, but in so doing must provide clear

4   and sufficient reasons for the cancellation of the appeal and the steps the inmate must take to

5   qualify the appeal for processing.  Id. at § 3084.5(b)(3).  A cancelled appeal does not serve to

6   exhaust the administrative remedies under California regulations.  Id. at § 3084.1(b).  An inmate

7   who has not resubmitted a cancelled appeal or who has not appealed the cancellation decision

8   therefore does not satisfy the exhaustion requirement.  Woodford, 548 U.S. at 83-84.

9    Defendants submit evidence, by way of declaration of J. Wood, Correctional Counselor II

10  and Appeals Coordinator at CCI, who declares that any inmate grievance relating to CCI must be

11  filed through the CCI appeals office.  (Decl. of J. Wood ¶ 3.)  The only appeals regarding an

12  allegation of staff misconduct that Plaintiff filed at CCI as of August 11, 2016, that are in the

13  computerized Inmate/Parolee Appeals Tracking System (IATS) are appeal log no. 412 and

14  appeal log no. 564.  (Decl. of J. Wood at ¶ 10, Ex. A.)  Defendants also submit the declaration of

15  M. Voong, Chief of the Office of Appeals at CDCR, who declares that the Office of Appeals

16  receives and processes all non-medical inmate appeals submitted to the third and final level of

17  the CDCR's administrative appeals process.  (Decl. of M. Voong ¶ 3.)  The only appeals that

18  Plaintiff submitted to the third level of review in or after 2013 that originated from CCI is log no.

19  564.  (Decl. of M. Voong ¶ 10, Ex. A.)

20   Plaintiff submitted a 602 appeal, on or about January 31, 2014, which was marked as

21  appeal log no. 412, challenging the incident he alleges took place on March 11, 2013.  (Decl. of

22  J. Wood ¶ 11.)  This appeal was cancelled at the first level of review as untimely on February 24,

23  2014.  (Decl. of J. Wood ¶ 11.)  Plaintiff resubmitted appeal log no. 412, which was then

24  cancelled in a letter dated April 25, 2014, because it was an attempt to resubmit the same appeal.

25  (Decl. of J. Wood ¶ 11.)

26   Pursuant to the applicable regulations, Plaintiff had thirty days to submit his grievance.

27  Cal. Code Regs. tit. 15, § 3084.8(b). A deficient appeal may be cancelled for the reasons

28  specified in the regulations, including for submitting an untimely appeal.  Cal. Code Regs. tit. 15,

1    § 3084.6(c)(4).  Cancellation terminates an appeal.  However, a cancellation decision may itself

2    be challenged through the appeals process.  (Decl. of M. Voong ¶ 11.)

3          On March 4, 2014, Plaintiff submitted another appeal regarding the March 11, 2013

4    incident, which was marked as appeal log no. 564.  (Decl. of J. Wood ¶ 12.)  Appeal log no. 564

5    was bypassed by the first level of review, but was cancelled at the second level of review on

6    March 13, 2014, because it was a duplicate of the prior appeal, appeal log no. 412.  (Decl. of J.

7    Wood ¶ 12.)  On April 11, 2014, the Office of Appeals received appeal log no. 564, but it was

8    screened out on May 9, 2014, because it was a repeated filing of a cancelled appeal.  (Decl. of M.

9    Voong ¶ 10.)

10         Defendants have met their initial burden of demonstrating that Plaintiff failed to exhaust

11   the administrative remedies as to the substance of his claims.  Plaintiff concedes that he did not

12   exhaust his administrative remedies.  Therefore, the burden shifts to Plaintiff "to come forward

13   with evidence showing that there is something in his particular case that made the existing and

14   generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at

15   1172.

16         The Supreme Court has "recognized three circumstances in which an administrative

17   remedy was not capable of use to obtain relief despite being officially available to the inmate: (1)

18   when the administrative procedure 'operates as a simple dead end' because officers are 'unable

19   or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative

20   scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no

21   ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates

22   from taking advantage of a grievance process through machination, misrepresentation, or

23   intimidation.' "  Andres v. Marshall, 854 F.3d 1103, 1104 (9th Cir. 2017) (quoting Ross, 136

24   S.Ct. at 1859-60).

25         Plaintiff argues that he was housed in a "management cell" on March 11, 2013.  (Decl. of

26   Garcia ¶ 4.)  Plaintiff contends that he asked Defendant Emerson for a 602 form and attached,

27   but he refused to provide one and commented, "Don't bother…602s make it to the trash can."

28   (Decl. of Garcia ¶ 4.)  Plaintiff also asserts that his property was removed from the "management

cell" and he was restricted in obtaining writing materials and forms.  (Decl. of Garcia ¶ 4.)

Plaintiff argues that he prepared and correctly submitted a staff complaint written on 28-line paper on March 15, 2013, because Defendant Emerson refused to provide the 602 forms that Plaintiff requested.  (Decl. of ¶ 5.)  Plaintiff contends that he did not receive a response.  (Decl. of Garcia ¶ 5.)

Plaintiff asserts that when he was rehoused in a normal cell on April 5, 2013, he obtained a blank 602 form from another prisoner, completed it, and correctly submitted it addressed to the Appeals Coordinators Office before April 7, 2013.  (Decl. of Garcia ¶ 5.)  He contends that he did not receive a response.  (Decl. of Garcia ¶ 5.)  Plaintiff alleged in his verified first amended complaint that he submitted the 602 form as a staff complaint against Defendants Emerson, Hobmeier, Wildey, Gaona, and Rodriguez[3] via institutional mail in an envelope that instructs not to seal the envelope.  (ECF No. 28 at 9:1-19.)[4]  He alleged that it was not answered or returned. (ECF No. 28 at 9:19-20.)

In their reply, Defendants assert that Plaintiff's claim that he filed grievances but never received a response is not credible as Plaintiff has failed to proffer any competent, admissible evidence that would prove he was unable to exhaust administrative remedies and no dispute of fact exists.   Defendants contend that the documentary evidence on the record tends to show that the allegedly-submitted appeals in March 2013 and April 2013 never existed or were improperly submitted by Plaintiff.   There is no proof on the record that the March 2013 and April 2013 appeals were actually received.   However, the fact that the appeals were not logged does not refute Plaintiff's assertion that the appeals were destroyed.   Defendants contend in their reply that Plaintiff presents no evidence, other than his self-serving opposition and declaration, demonstrating the existence of the March 2013 and April 2013 appeals or that Defendant Emerson unlawfully retaliated against him by destroying those appeals or removing them from the appeals process.

---

[3] Defendant Rodriguez was dismissed from this action on June 3, 2016, based on a failure to state a claim against him upon which relief may be granted.  (ECF No. 33.)

[4] Because Plaintiff's first amended complaint is verified it constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

1    However, Plaintiff did not merely make unsupported assertions in his opposition.
2    Plaintiff submitted a declaration in support of his opposition to Defendants' motion for summary
3    judgment.  In addition, Plaintiff's first amended complaint is verified, so it may be considered an
4    opposing affidavit for purposes of ruling on the motion for summary judgment.  See Jones, 393
5    F.3d at 923.  Rule 56 of the Federal Rules of Civil Procedure provides that a party asserting that
6    a fact is genuinely disputed must support the assertion by citing to particular materials in the
7    record.  Fed. R. Civ. P. 56(c)(1).  Affidavits and declarations are some of the materials that may
8    be cited to support the party's argument.  Id.

9    Here, Plaintiff's evidence is sufficient to create a genuine issue of material fact regarding
10   whether Defendant Emerson did not give Plaintiff a 602 form on March 11, 2013, whether
11   Plaintiff submitted a handwritten appeal on March 15, 2013, and whether Plaintiff submitted a
12   602 form between April 5, 2013, and April 7, 2013.

13   The Court notes that Defendants had the opportunity to refute Plaintiff's claims that his
14   March 2013 and April 2013 appeal attempts were thwarted.  However, Defendants have not
15   submitted evidence, such as a declaration from Defendant Emerson, to dispute Plaintiff's claims
16   that Defendant Emerson did not give Plaintiff a 602 form on March 11, 2013, that Plaintiff
17   submitted a handwritten appeal on March 15, 2013, and that Plaintiff submitted a 602 form
18   between April 5, 2013, and April 7, 2013.  The Court notes that Defendants have not submitted
19   evidence that creates a disputed fact that requires the Court to make a credibility determination in
20   order to decide this motion.  The Court is able to decide the instant motion based on the parties'
21   written submissions.

22   Defendants also argue that Plaintiff had the opportunity to exhaust his administrative
23   remedies in 2014 when he filed appeal log no. 412, and appeal log no. 564.  While Defendants
24   argue that a prisoner must continue exhausting administrative remedies after prison officials
25   allegedly thwart his attempts at administrative exhaustion, the Court is not persuaded by this
26   argument.  See Cato v. Darst, 2015 WL 4456097, at *7-8 (E.D. Cal. July 20, 2015) (citations
27   omitted).  If CCI prison officials refused to provide Plaintiff with a 602 form and did not file and
28   respond to his March 15, 2013 grievance and April 2013 grievance, or otherwise thwarted his

1    attempts to pursue these grievances, then he was not required to file additional grievances in

2    2014.  See Cato, 2015 WL 4456097, at *7-8.

3         In addition, Defendants argue that Plaintiff had demonstrated the ability to successfully

4    navigate the administrative appeals process because Plaintiff had received third-level decisions

5    on a prior appeal.  (Decl. of M. Voong, Ex. A).  The Ninth Circuit has held that the fact that a

6    plaintiff has been able to file unrelated appeals successfully does not rebut a plaintiff's assertion

7    that administrative remedies were not available at the time he or she tried to file the relevant

8    grievance.  Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015).  While Plaintiff filed

9    appeals to the third level of review in 2004, 2006, and 2009 in unrelated matters, that fact is not

10   sufficient to refute Plaintiff's assertion that official action prevented him from filing a particular

11   grievance.  See Williams, 775 F.3d at 1192.

12        Therefore, viewing the facts in the light most favorable to Plaintiff, the Court finds that

13   there is a genuine issue of material fact surrounding Plaintiff's alleged attempt to exhaust

14   administrative remedies.  Accordingly, the Court finds that Defendants' motion for summary

15   judgment for failure to exhaust administrative remedies should be denied.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

**IV.**

2

**RECOMMENDATIONS**

3      Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for

4  summary judgment for failure to exhaust administrative remedies be denied.

5      These Findings and Recommendations will be submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty**

7  **(30) days** after being served with these Findings and Recommendations, the parties may file

8  written objections with the Court.  The document should be captioned "Objections to Magistrate

9  Judge's Findings and Recommendations."  The parties are advised that failure to file objections

10  within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>,

11  772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir.

12  1991)).

13

14  IT IS SO ORDERED.

15  Dated:   **July 25, 2017**

16                                              UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28